**POLAROID CORPORATION, Plaintiff,**

v.

**PERMARITE CORPORATION, Sarah Rechter, and Julius Winiar, Defendants.**

United States District Court
S. D. New York.
July 18, 1960.

Rynn Berry, New York City, William W. Rymer, Boston, Mass., for plaintiff.

Maurice v. Seligson, New York City, for defendants.

PALMIERI, District Judge.

This cause came on to be heard on plaintiff's motion for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and the court having considered the complaint and answer, the affidavits submitted in support of said motion and in opposition thereto together with the documentary and physical exhibits, and counsel for both parties having been heard in oral argument upon said motion, and it appearing to the court that there is reasonable cause to believe that defendant Permarite Corporation is actually engaged in committing and will continue to commit the acts set forth below to the irreparable injury of the plaintiff, the court grants the plaintiff's motion making the following:

### Findings of Fact

1. The plaintiff, Polaroid Corporation, is a Delaware corporation with its principal place of business in Cambridge, Massachusetts.

2. Defendant Permarite Corporation is a New York corporation with its principal place of business in the Borough of Manhattan, City and State of New York.

3. Plaintiff, Polaroid Corporation, is the owner of numerous trademark registrations of the word Polaroid, including United States Registration 399,329 specifically for, *inter alia*, lenses and eyeglasses and New York State registration specifically for, *inter alia*, lenses and sunglasses.

4. The amount in controversy is in excess of $10,000, exclusive of interest and costs.

5. Sales of products marked Polaroid have exceeded a million dollars in every year since 1941, twenty million dollars in every year since 1953, and were almost ninety million dollars in 1959. Since 1953, advertising of products under this mark has been in excess of a million dollars a year, and in 1959 it was in excess of six million dollars. Advertising expenses for such products have amounted to thirteen thousand dollars or more in every year since 1938. In 1948 such advertising expenses were fifty-three thousand dollars; in every other year since 1945 such advertising expenses exceeded ninety-nine thousand dollars.

6. Sales of genuine Polaroid sunglasses have exceeded five million pairs per year for the past several years.

7. "Polaroid" sunglasses are widely and favorably known as a product of uniformly high quality.

8. In 1958 defendant Permarite Corporation (hereinafter called "Permarite"), purchased over 200,000 "Polaroid" goggle filters which had been sold by the United States Government as surplus.

9. These goggle filters were much larger than lenses of ordinary sunglasses, and had been sold by plaintiff to the United States Government during World War II for use in Air Force pilots' helmets.

10. Permarite is selling sunglasses with relatively small lenses cut out from the larger goggle filters without plaintiff's supervision. Plaintiff has no connection with Permarite's glasses except for having manufactured the goggle filters which Permarite has used to cut out its sunglass lenses.

11. Defendant Permarite is using, in marketing its sunglasses, a display card carrying a dozen pairs and conspicuously marked at the top in large print: "Sunglasses with genuine Polaroid Lenses." Each pair bears a small green metallic tag reading "U.S. Govt. Surplus Polaroid lenses $2.49 frame by Permarite," the word Polaroid being printed in a manner which makes it stand out with greater prominence than any other word on the tag. In writing prospective customers, Permarite used a form letter asserting seven times that its glasses had Polaroid lenses and, at one point in the letter, referred to its product as "surplus Polaroid sunglasses."

12. As a result of the aforesaid manner in which Permarite circulates, advertises, and represents its product, buyers may reasonably be expected to conclude that plaintiff made or was responsible for having manufactured the lenses for use in sunglasses, contrary to the fact.

13. Nowhere in the display card, the green tag, or the form letter above referred to does Permarite state who is responsible for the overall composition of its sunglasses. Permarite is disclosed as responsible for the frames only. The green tags are marked $2.49, a price quite disproportionate to that at which Permarite offers them for sale to dealers —about fifteen to fifty cents each—but very like that of genuine Polaroid sunglasses, many of which have been tagged with a price of $2.39. The word Permarite is used in a manner consistent with its identification as a subsidiary mark or the supplier of a part only, namely, the frames.

14. The polarizing material of which the goggle filters were made has less polarizing efficiency than the material used by plaintiff since 1947. Also, because the goggle filter material was a flat sheet and was not molded in optical curvature as all genuine Polaroid sunglasses have been since 1947, the goggle filter material sunglasses produce greater distortion. Moreover, when this material is used as a sunglass lens, it lacks esthetic appeal.

15. The polarizing material of the goggle filters, and the sunglass lenses cut therefrom, are inferior to genuine Polaroid sunglasses of recent years in lacking a scratch-resistant coating. The absence of such a coating diminishes the utility of the sunglasses.

16. Defendant Permarite's sunglass lenses have less effectiveness in protecting the eyes from glare because they have been cut out with complete disregard for the location of the transmission and absorption axes of the material.

17. Imbalance between lenses of a single spectacle characterizes many of defendant's sunglasses and tends to produce discomfort and headache in the wearer. This condition of imbalance is not present in plaintiff's sunglasses.

18. There is nothing in the display card, green tag, or form letter that would disclose to buyers that Permarite's lenses are made from material which is substantially different from that characteristic of genuine Polaroid sunglasses. Although the display card, in a relatively inconspicuous position at the top right

corner, bears the words "Polaroid M–1944 Goggle Filters," this reference falls short of informing the ordinary consumer of the difference in character between Permarite's lenses and the genuine product of post-war years on which plaintiff's public reputation is based.

19. In view of defendant Permarite's admission that it would never have bought the goggle filters except for the Polaroid trademark, its form letter misrepresentation that it was selling "Polaroid sunglasses," its misrepresentation running through its sales literature that its sunglasses had "genuine Polaroid Lenses," its display card, tags, and form letter appear to have been adopted and used only for the purpose of trading upon the good will of the plaintiff symbolized by the word Polaroid. This was contrived to enable Permarite to pass off its sunglasses to the ultimate purchasing public as and for the product of plaintiff so that Permarite might profit from the resulting consumer confusion and deception.

On the basis of the foregoing, the court makes the following:

## Conclusions of Law

1. The court has jurisdiction over the parties and subject matter of the action.

2. Upon a trial of the merits, it appears probable that plaintiff can prove that:

(a) Plaintiff's registrations of Polaroid, federal Reg. No. 399,329 and its New York registration, are valid.

(b) Defendant Permarite in selling sunglasses with lenses made from Polaroid goggle filter sheet material on display cards as above described and bearing tags as above described, infringed the plaintiff's said registrations.

(c) By its said conduct and in using its form letter above described, defendant Permarite competed unfairly with plaintiff.

(d) It was trademark infringement and unfair competition for defendant Permarite to use the name Polaroid without making full disclosure of plaintiff's actual relation to Permarite's sunglasses.

3. In view of the irreparable injury that will be suffered by plaintiff if defendant Permarite's trademark infringement and unfair competition is not immediately enjoined, the lack of dispute as to the basic facts, and plaintiff's showing of its probable right to relief on the law, injunctive relief pendente lite should be granted.

4. Upon the giving of security by the plaintiff in the sum of $2,500 an order containing the following provisions will be entered:

The plaintiff having given security approved by the court in the sum of $2,500 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained, it is, upon the findings of fact and conclusions of law entered by the court on July 18, 1960, therefore

Ordered that defendant and its officers, agents, servants, employees, successors and attorneys, and those persons in active concert or participation with them who receive actual notice hereof, or any of them and each of them, be and they hereby are restrained and enjoined, pending the determination of this action, from directly or indirectly:

(a) representing or suggesting that lenses cut from goggle filters are genuine Polaroid lenses;

(b) representing or suggesting that sunglasses containing lenses cut from goggle filters are Polaroid sunglasses;

(c) making any use whatever of the word Polaroid without making, in words of corresponding size and type style, full, honest disclosure of plaintiff's exact relationship to the product with which the word Polaroid is used.

(d) making any use whatever of the word Polaroid in connection with sunglasses containing lenses cut from goggle filters except in a notice substantially as follows, in which the word "Polaroid" shall be in letters no different in size and character from the remaining words:

"These sunglasses were made by Permarite Corporation, not connected with Polaroid Corporation, by cutting out lenses from Polaroid goggle filters made by Polaroid Corporation for the United States Government during World War II and later sold as surplus. Frames were supplied and the lenses were placed therein by Permarite Corporation.

The plaintiff shall give security and submit an order as indicated herein.